Citation Nr: 1522688 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 10-09 150 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to an evaluation in excess of 10 percent for service-connected lumbar spine degenerative disc disease and degenerative joint disease, L4-L5, with scoliosis.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

M. L. Marcum, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 1979 to March 1999. This matter comes before the Board of Veterans' Appeals (Board) on appeal from March 2009, October 2013, and October 2014 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. 


REMAND

Review of the claims file reveals that VA has a further duty to assist the Veteran in developing evidence pertinent to his claims herein. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2014).

A. Lumbar Spine Disorder

The Veteran is seeking an evaluation in excess of 10 percent for his service-connected lumbar spine degenerative disc disease and degenerative joint disease, L4-L5, with scoliosis.

As an initial matter, the RO must, with the assistance of the Veteran, obtain any available updated medical records regarding treatment for his service-connected lumbar spine disorder.

Additionally, at his March 2015 hearing before the Board, the Veteran testified that his low back disorder had worsened since he was last evaluated in November 2012. Given the passage of time since the Veteran was last examined, the Board finds that another medical examination is required to evaluate the severity of his service-connected lumbar spine degenerative disc disease and degenerative joint disease, L4-L5, with scoliosis. 38 C.F.R. § 3.159(c)(4)(i) (2014); see Snuffer v. Gober, 10 Vet. App. 400, 403 (1997) (indicating that a Veteran is entitled to a new examination after a two-year period between the last VA examination and the Veteran's contention that the pertinent disability had increased in severity); see also Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (holding that VA's statutory duty to assist includes a thorough and contemporaneous medical examination); Littke v. Derwinski, 1 Vet. App. 90, 93 (1990) (noting that remand may be required if the record before the Board contains insufficient medical information for evaluation purposes). 

In addressing the severity of the Veteran's low back symptomatology, the examiner must address any found neurological abnormalities stemming from the Veteran's service-connected lumbar spine disorder. Thereafter, the RO must consider whether a separate rating for neurological abnormalities stemming from the Veteran's lumbar spine disorder is warranted. In that regard, the question of entitlement to a separate rating for neurological abnormalities is part of the diagnostic criteria for spine disabilities and, therefore, is part of the current increased rating appeals. See 38 C.F.R. 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (1) (2014).

B. TDIU

The Veteran is seeking entitlement to a total disability rating based on individual unemployability (TDIU). Specifically, the Veteran claims that he stopped working for the Virginia Department of Corrections when he was deemed "disabled" for Social Security disability purposes in March 2011. He also contends that the functional effects of his service-connected disorders of (1) PTSD with alcohol dependency; (2) bilateral dry eyes; (3) tinea versicolor; (4) lumbar spine degenerative disc disease and degenerative joint disease, L4-L5, with scoliosis; (5) cervical strain with degenerative disc disease and osteoarthritis; (6) metatarsalgia with degenerative joint disease of the first MTP and calcaneal spurs of the left foot; (7) right wrist tendonitis status post fracture; and (8) left wrist tendonitis, prevent him from obtaining and/or maintaining any substantially gainful employment consistent with his education and occupational experience. 

In November 2012, the Veteran underwent a series of separate VA examinations for his service-connected disorders. The VA examiners assessed the severity of the Veteran's service-connected disorders individually and noted the functional impact and impairment of each disorder on his ability to work. However, an examiner did not address whether the functional effects of the Veteran's service-connected disabilities, acting in concert with each other, preclude him from securing and following substantially gainful employment consistent with his education and occupational experience. 

Under these circumstances, the RO must obtain a supplemental medical opinion addressing whether the functional effects of the Veteran's service-connected disabilities prevent him from obtaining and/or maintaining substantially gainful employment consistent with his education and occupational experience. See 38 C.F.R. § 3.159(c)(4)(i); see also Snuffer, 10 Vet. App. at 403; Green, 1 Vet. App. at 124.

Accordingly, the case is remanded for the following actions:

1. The RO must contact the Veteran and afford him the opportunity to identify all VA and non-VA medical care providers who have treated him for his service-connected disabilities during the course of this appeal. Based on his response, the RO must attempt to procure copies of all records which have not previously been obtained from identified treatment sources. 

When requesting records not in the custody of a Federal department or agency, such as private treatment records, the RO must make an initial request for the records and at least one follow-up request if the records are not received or a response that records do not exist is not received. All attempts to secure this evidence must be documented in the claims file by the RO. If, after making reasonable efforts to obtain named records, the RO is unable to secure the same, the RO must notify the Veteran and (a) identify the specific records the RO is unable to obtain; (b) briefly explain the efforts that the RO made to obtain those records; (c) describe any further action to be taken by the RO with respect to the claim; and (d) that he is ultimately responsible for providing the evidence. The Veteran must then be given an opportunity to respond. 

2. Thereafter, the Veteran must be afforded a VA examination to determine the severity of his service-connected lumbar spine degenerative disc disease and degenerative joint disease, L4-L5, with scoliosis. The evidence of record, in the form of electronic records, must be made available to the examiner, and the examiner must specify in the examination report that these records have been reviewed. 

The examiner must record all pertinent medical complaints, symptoms, and clinical findings, in detail. The examiner must state whether there is any evidence of favorable or unfavorable ankylosis of the spine, and determine the active range of motion of the Veteran's lumbar spine, in degrees, by use of a goniometer noting by comparison the normal range of motion of the lumbar spine. If pain on motion of the lumbar spine is shown, the examiner must state at what degree the pain begins. The same range of motion studies must then be repeated after at least three repetitions and after any appropriate weight bearing exertion. The examiner must state whether there is weakened movement, excess fatigability, or incoordination attributable to the service-connected lumbar spine disability, expressed in terms of the degree of additional range of motion loss or favorable or unfavorable ankylosis due to any weakened movement, excess fatigability, or incoordination.

The examiner must also state whether the Veteran has intervertebral disc syndrome causing incapacitating episodes requiring prescribed bed rest, and if found, the examiner must report the frequency and total duration of such episodes over the course of the previous 12 months.

A thorough neurological examination of the Veteran's low back must be conducted. The examiner must specifically state whether any neurologic manifestations found are caused by the Veteran's service-connected low back disorder. The examiner must also specifically state whether any neurologic manifestations found result in complete or incomplete paralysis of any nerve. The specific nerves involved must be identified. If incomplete paralysis is found, the examiner must state whether the incomplete paralysis is best characterized as mild, moderate, or severe; with the provision that wholly sensory involvement should be characterized as mild, or at most, moderate. 

3. After the above actions are completed, the RO must obtain a supplemental medical opinion addressing whether the functional effects of the Veteran's service-connected disabilities of (1) PTSD with alcohol dependency; (2) bilateral dry eyes; (3) tinea versicolor; (4) lumbar spine degenerative disc disease and degenerative joint disease, L4-L5, with scoliosis; (5) cervical strain with degenerative disc disease and osteoarthritis; (6) metatarsalgia with degenerative joint disease of the first MTP and calcaneal spurs of the left foot; (7) right wrist tendonitis status post fracture; and (8) left wrist tendonitis, prevent him from obtaining and/or maintaining substantially gainful employment consistent with his education and occupational experience. 

The evidence of record, in the form of electronic records, must be made available to the examiner, and the examiner must specify in the examination report that these records have been reviewed. 

Based on a review of the evidence of record, the clinical evaluation, and with consideration of the Veteran's statements, the examiner must provide an opinion as to whether the functional effects of the Veteran's service-connected disabilities, either alone or acting in concert with each other, preclude him from securing and following substantially gainful employment consistent with his education and occupational experience. This opinion must be provided without consideration of his nonservice connected disabilities, or age. 

A complete rationale for all opinions must be provided. If the examiner cannot provide a requested opinion without resorting to speculation, it must be so stated, and the examiner must provide the reasons why an opinion would require speculation. The examiner must indicate whether there was any further need for information or testing necessary to make a determination. Additionally, the examiner must indicate whether any opinion could not be rendered due to limitations of knowledge in the medical community at large and not those of the particular examiner.

4. The RO must notify the Veteran that it is his responsibility to report for any examination scheduled, and to cooperate in the development of the claims. The consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2014). In the event that the Veteran does not report for a scheduled examination, documentation must be obtained and associated with the Veteran's claims file that shows that notice scheduling the examination was sent to his last known address. Documentation must be also be obtained and associated with the Veteran's claims file demonstrating any notice that was sent was returned as undeliverable.

5. The examination reports must be reviewed to ensure that they are in complete compliance with the directives of this remand. If a report is deficient in any manner, the RO must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998).

6. After completing the above actions and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the RO must adjudicate the claims on appeal. If any benefit remains denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.



No action is required by the Veteran until he receives further notice; however, he may present additional evidence or argument while the case is in remand status at the RO. Kutscherousky v. West, 12 Vet. App. 369 (1999).



_________________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).