http://www.va.gov/vetapp16/Files4/1630415.txt

Citation Nr: 1630415 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 12-08 176A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina

THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD) with major depression.

2. Entitlement to an initial rating in excess of 10 percent for lumbar strain. 

3. Entitlement to an initial compensable rating for hypertension.

4. Entitlement to a total disability evaluation, based on individual unemployability, due to service-connected disabilities (TDIU). 

REPRESENTATION

Veteran represented by: The American Legion

WITNESS AT HEARING ON APPEAL

Veteran and his friend

ATTORNEY FOR THE BOARD

Sara Kravitz, Associate Counsel

INTRODUCTION

The Veteran had active service from May 1988 to November 1994.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2010 rating decision of the Winston-Salem, North Caroline Regional Office (RO), which granted service connection for PTSD, hypertension, and a lumbar spine disability. The Veteran appealed the assigned disability ratings. 

The Veteran testified before the undersigned at a travel Board hearing in December 2013. A transcript of this hearing has been associated with the claims file. 

This record in this matter consists solely of electronic claims files and has been reviewed. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.

REMAND

First, the last VA medical center (VAMC) records are from 2012 even though the Veteran stated at his 2013 hearing that he continued to receive treatment at the VAMC; therefore, updated VAMC records should be obtained. 
The Veteran's last VA examinations for the above service-connected disabilities were in September and October 2010. Since then, the Veteran has submitted opinions from a Dr. E.H. contending that the Veteran cannot work due to his PTSD. He also testified at his December 2013 hearing that his conditions had worsened, including requiring regular pain management and cortisone shots for his lumbar strain, and experiencing symptoms of panic attacks and memory loss due his PTSD, among others. Therefore, upon remand the Veteran should be afforded new VA examinations to determine the current severity of his service-connected disabilities on appeal. See Littke v. Derwinski, 1 Vet. App. 90, 92 (1990) (noting that VA's duty to assist includes the conduct of a contemporaneous medical examination, in particular where it is contended that a service-connected disability has become worse); see also Snuffer v. Gober, 10 Vet. App. 400 (1997) (finding that a veteran is entitled to a new VA examination where there is evidence that the condition has worsened since the last examination).

Accordingly, the case is REMANDED for the following actions:

1. Obtain any outstanding VAMC treatment records.

2. The Veteran should be afforded a VA psychiatric examination to determine the current symptoms and severity of his service-connected PTSD. The Veteran's claims file should be made available to the examiner prior to the examination, and the examiner is requested to review the entire claims file in conjunction with the examination. 

All tests and studies deemed necessary by the examiner should be performed. In discussing the relevant clinical findings, the examiner should specifically note the Veteran's current complaints, symptoms, any interference with daily and/or occupational activities, and the level of disability. 
The examiner must also provide an assessment of the Veteran's functional limitations due to PTSD, as they may relate to his ability to function in a work setting and to perform work tasks. 

A complete rationale should be given for all opinions and conclusions expressed in a typewritten report.

3. The Veteran should be afforded a VA examination to determine the current symptoms and severity of his service-connected lumbar strain. The Veteran's claims file should be made available to the examiner prior to the examination, and the examiner is requested to review the entire claims file in conjunction with the examination.

All indicated studies, including range of motion studies in degrees using a goniometer, should be performed. In reporting the results of range of motion testing, the examiner should identify any objective evidence of pain and the specific excursion(s) of motion, if any, accompanied by pain. To the extent possible, the examiner should assess the degree of severity of any pain. 

The extent of any incoordination, weakened movement, and excess fatigability on use should also be described by the examiner. If feasible, the examiner should assess the additional functional impairment due to weakened movement, excess fatigability, or incoordination in terms of the degree of additional range of motion loss. 

The examiner should also express an opinion concerning whether there would be additional limits on functional ability on repeated use or during flare-ups (if the Veteran describes flare-ups), and, to the extent possible, provide an assessment of the functional impairment on repeated use or during flare-ups. If feasible, the examiner should assess the additional functional impairment on repeated use or during flare-ups in terms of the degree of additional range of motion loss. The examiner should also specifically report at what point any pain begins, and at what point any pain causes any functional impairment, or whether there is any additional range of motion loss due to excess fatigability, incoordination, or flare-ups. If such is not feasible, the examiner should explain why.

The examiner should indicate whether the Veteran's lumbar strain is so severe so as to result in incapacitating episodes (i.e., episodes in which his adverse symptomatology required bed rest ordered by a physician). If so, the examiner should comment on the duration and frequency of such incapacitating episodes. 

The examiner should comment on whether there is any neurological abnormality associated with low back disability, to include but not limited to bladder or bowel impairment. 

The examiner must also provide an assessment of the Veteran's functional limitations due to his lumbar strain, as they may relate to his ability to function in a work setting and to perform work tasks. 

A complete rationale should be given for all opinions and conclusions expressed in a typewritten report.

4. The Veteran should be afforded a VA examination to determine the current symptoms and severity of his service-connected hypertension. The Veteran's claims file should be made available to the examiner prior to the examination, and the examiner is requested to review the entire claims file in conjunction with the examination. 

All tests and studies deemed necessary by the examiner should be performed. In discussing the relevant clinical findings, the examiner should specifically note the Veteran's current complaints, symptoms, any interference with daily and/or occupational activities, and the level of disability. 

The examiner must also provide an assessment of the Veteran's functional limitations due to hypertension as they may relate to his ability to function in a work setting and to perform work tasks. 

A complete rationale should be given for all opinions and conclusions expressed in a typewritten report.

5. Then, after ensuring any other necessary development has been completed, readjudicate the Veteran's claims, including his claim for TDIU. If action remains adverse to the Veteran, provide the Veteran and her representative with a supplemental statement of the case and allow an appropriate opportunity to respond. Thereafter, the case should be returned to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).